IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Application of GEORGE W. SCHLICH for Order to Take Discovery Pursuant to 28 U.S.C. § 1782,<br><br>Applicant. | Case No. 1:16-mc-91278 |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* PETITION AND APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
2 Seaport Lane
Boston MA 02210-2001
Telephone: 617.646.1600
Facsimile: 617.646.1666

LATHAM & WATKINS LLP
555 Eleventh St., NW
Washington, D.C. 20004-1304
Telephone: .202.637.2200
Facsimile: +202.637.2201

*Attorneys for Applicant George W. Schlich*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

FACTUAL BACKGROUND ................................................................................5

A.                  INTELLIA ...............................................................................5

B.                  THE BROAD PATENTS .........................................................6

C.                  THE INTELLIA OPPOSITION PROCEEDINGS
BEFORE THE EUROPEAN PATENT OFFICE ......................7

D.                  THE DISCOVERY SOUGHT HERE ....................................10

ARGUMENT .....................................................................................................11

A.                  THE REQUESTED DISCOVERY SATISFIES THE
STATUTORY REQUIREMENTS OF SECTION 1782 ..........11

          1.      THE RESPONDENTS ARE FOUND WITHIN THIS
DISTRICT...............................................................................12

          2.      THE DISCOVERY SOUGHT IS FOR USE IN
PROCEEDINGS IN A FOREIGN TRIBUNAL ......................12

          3.      APPLICANT IS AN INTERESTED PARTY ...........................13

          4.      THE DISCOVERY SOUGHT IS NOT PRIVILEGED ............14

B.                  ALL OF THE DISCRETIONARY FACTORS OF
SECTION 1782 WEIGH IN FAVOR OF PERMITTING
THE DISCOVERY APPLICANT SEEKS...............................16

          1.      THE DISCOVERY SOUGHT IS UNOBTAINABLE
ABSENT SECTION 1782 AID.................................................17

          2.      THE EUROPEAN PATENT OFFICE IS RECEPTIVE TO
DISCOVERY PURSUANT TO SECTION 1782 .....................18

          3.      THE PETITION IS NOT AN EFFORT TO
CIRCUMVENT FOREIGN PROOF-GATHERING
RESTRICTIONS ....................................................................20

          4.      THE DISCOVERY IS NEITHER UNDULY
BURDENSOME NOR INTRUSIVE .......................................20

CONCLUSION .................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Akebia Therapeutics, Inc. v. Fibrogen, Inc.*,
  793 F.3d 1108 (9th Cir. 2015) ...................................................................................13, 18, 19

*Amgen Inc. v. Hill*,
  No. 2:14-MC-00908-DN-EJF, 2015 WL 1401237 (D. Utah Mar. 25, 2015) .........................13

*In re Application of Chevron Corp.*,
  709 F. Supp. 2d 283 (S.D.N.Y. 2010)...................................................................................4

*In re Application of Chevron Corp.*,
  749 F. Supp. 2d 135 (S.D.N.Y. 2010)..................................................................................16

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS*
  *Forwarding (USA), Inc.*,
  747 F.3d 1262 (11th Cir. 2014) .....................................................................................12, 21

*In re Application For an Order Permitting Metallgesellschaft AG*,
  121 F.3d 77 (2d Cir. 1997)..................................................................................................21

*In re Ex Parte Application of Pro-Sys Consultants and Neil Godfrey*,
  No. 16-mc-91016-PBS, 2016 WL 4154306 (D. Mass. Aug. 5, 2016)...................................16

*In re Application of Republic of Ecuador v. Douglas*,
  153 F. Supp. 3d 484 (D. Mass. 2015) .................................................................................14

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998).................................................................................4, 19, 20, 21

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
  237 F.R.D. 618 (N.D. Cal. 2006)....................................................................................15, 16

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012)..................................................................................................11

*Chevron v. Shefftz*,
  754 F. Supp. 2d 254 (D. Mass. 2010) .............................................................................19, 20

*Cryolife, Inc. v. Tenaxis Medical, Inc.*,
  No. C08-05124 HRL, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009) .........................................18

*In re Edelman*,
  295 F.3d 171 (2d Cir. 2002).................................................................................................12

*Euromepa, S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995)..........................................................................................19, 21

*Fisher v. United States*,
  425 U.S. 391 (1976)............................................................................................................14

*Fort James Corp. v. Solo Cup Co.*,
  412 F.3d 1340 (Fed. Cir. 2005)..........................................................................................15

*Genentech, Inc. v. ITC*,
  122 F.3d 1409 (Fed. Cir. 1997)..........................................................................................15

*In re Gianoli Aldunate*,
  3 F.3d 54 (2d Cir.), *cert. denied*, 510 U.S. 965 (1993)........................................................11

*Heraeus Kulzer, GmBH v. Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) .................................................................................16, 18, 21

*Hoffman-LaRoche, Inc. v. Roxane Laboratories, Inc.*,
  C.A. No. 09-6335, 2011 WL 1792791 (May 11, 2011 D.N.J.) ..........................................15

*In re Appl. of Ooo Promnefstroy*,
  Misc. No. M 19–99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) .............................17

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)..................................................................................................... *passim*

*In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*
  *(Macquarie Bank II)*,
  No. 2:14–cv–00797–GMN–NJK, 2015 WL 3439103 (D. Nev. May 28, 2015) ....................17

*Macquarie Bank Ltd.*,
  2015 WL 7258483 (D. Nev. Nov. 17, 2015) ........................................................................17

*Marubeni America Corp. v. LBA Y.K.*,
  335 Fed. App'x 95 (2d Cir. 2009)........................................................................................18

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015)................................................................................................20

*In re Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006)..................................................................................18

*Minatec Finance S.à.r.l. v. SI Grp. Inc.*,
  No. 1:08-cv-269-LEK, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)..................................13

*Minis v. Thomson*,
  No. 14-91050, 2014 WL 1599947 (D. Mass. Apr. 18, 2014)................................................14

*In re Servicio Pan Americano de Proteccion*,
  354 F. Supp. 2d 269 (S.D.N.Y. 2004) .................................................................................18

*Winbond Electronics Corp. v. ITC*,
  262 F.3d 1363(Fed. Cir. 2001) ...........................................................................................15

## STATUTES

28 U.S.C. § 1782 ........................................................................................................... passim

## OTHER AUTHORITIES

S.Rep. No. 88–1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782 .......................................11, 12

Applicant George W. Schlich ("Schlich" or "Applicant"), as an agent for Intellia

Therapeutics, Inc. ("Intellia"), respectfully petitions this Court for an order, pursuant to 28

U.S.C. § 1782, authorizing discovery from The Broad Institute, Inc. ("Broad"), Feng Zhang

("Zhang"), Le Cong ("Cong"), and Naomi Habib ("Habib") (collectively "Respondents") for use

in pending opposition proceedings in the European Patent Office ("EPO").

## INTRODUCTION

This Petition relates to the underlying European patent rights for aspects of CRISPR/Cas9

technology, a biotechnology breakthrough described as "the Biggest Biotech Discovery of the

Century." (*See* Ex. 8 at 1.)[1,2]  In an EPO proceeding brought by Applicant, and separately eight

other parties, to challenge patentability and seek revocation of certain CRISPR/Cas9 patents

owned by Broad and its partner institutions, Broad has provided to the EPO selective and

incomplete information.  Thus, Applicant seeks discovery, pursuant to Section 1782, so that it

may provide the EPO with all the facts and complete the story before rendering its ruling.

The CRISPR/Cas9 system is a revolutionary biological tool permitting precise, targeted

editing of genomic DNA.  The system uses an enzyme called "Cas9," which functions as a

molecular scissors, to cut DNA at a particular chosen sequence.  The CRISPR/Cas9 system

makes it possible to delete, repair, or insert genetic material at the "cut site."  This system is

quicker, more simple, less costly, and more precise than prior DNA editing technologies,

opening up a broad range of possible applications.  First and foremost, the technology has great

---

[1] *See* The Declaration of Mary K. Ferguson in Support of *Ex Parte* Petition and Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Dsicovery for Use in Foreign Proceedings, submitted herewith**.**

[2] *See also* Ex. 9 at 20 (calling CRISPR/Cas 9 "the biggest game changer to hit biology" since 1985).

promise to cure genetic diseases, such as hemophilia, muscular dystrophy, cystic fibrosis, and Huntington's disease.  Intellia is harnessing the potential of the CRISPR/Cas9 system to develop potentially curative therapeutic options for patients with severe and potentially life-threatening diseases by addressing the underlying cause of the disease.  It seeks to bring new treatments and potential cures to patients who currently have few options.

As part of its mission to help patients, Intellia licensed certain patent applications on the CRISPR/Cas9 technology invented by, *inter alia*, Intellia co-founder Dr. Jennifer Doudna ("Doudna Patent Applications").  The first of these patent applications was filed on May 25, 2012, on the eve of publication of a groundbreaking article by Doudna and her colleagues in the journal Science (Ex. 10).  On December 12, 2012, another group of applicants including Respondents Zhang, Cong, and Habib of Respondent Broad, as well as Luciano Marraffini ("Marraffini") of The Rockefeller University ("Rockefeller") filed the first in a series of patent applications also claiming CRISPR/Cas9 technology ("Broad Patent Applications").  Although filed nearly seven months after the Doudna Patent Applications, Broad has obtained several patents in Europe that claim priority to the Broad Patent Applications ("Broad Patents").

Intellia, through its European patent agent Schlich, has filed oppositions[3] to the first four Broad Patents issued by the EPO challenging their patentability and seeking revocation of the patents.  Among other things, Intellia and other opponents have argued that one or more of the Broad Patents are invalid because they do not list certain inventors, including Respondents Cong and Habib, as applicants, despite claiming priority of invention back to the December 12, 2012 patent application on which these inventors were named.  By failing to list certain inventors as

---

[3] An "opposition" is a procedure that allows any third party to challenge the validity of a patent in an inter partes, quasi-judicial proceeding before the EPO.

applicants, and because those omitted inventors did not timely transfer their rights to any of the

listed applicants, the Broad Patents are not entitled to the benefit of priority of the Broad Patent

Applications.

In response to Intellia's arguments, Respondent Broad has argued that its priority claim is

proper because a United States inventorship analysis should dictate which applicants have the

right to claim priority.  Specifically, Broad argues that the inventorship analysis of its United

States attorney, Thomas Kowalski ("Kowalski") of the law firm Vedder Price P.C. ("Vedder"),

excuses its failure to include various inventors and applicants of priority applications when it

filed the applications that issued as the Broad Patents.  To support Broad's argument, Kowalski

submitted declarations to the EPO on behalf of Broad.  One declaration provides Kowalski's

opinion on the inventorship of the Broad Patents and Applications, and references and relies

upon documents from, and interviews with, the inventors (including Respondents Zhang, Cong,

and Habib).[4]  The underlying documents and interview materials, however, were not provided by

Broad to Applicant or the EPO.  In other words, neither the Applicant nor the EPO have the full

record; they only have the documents that Broad selectively wants them to see, and Kowalski's

conclusions.

To ensure that the EPO has the complete set of facts and documents relevant to the issues

raised in the opposition procedure, pursuant to Section 1782, Applicant makes a limited request

of this Court.  Specifically, Applicant respectfully requests document and deposition discovery

from Respondents related to the transfer of rights and inventorship issues discussed in Broad's

---

[4] Kowalski also submitted a declaration regarding the accuracy of certain assignment documents purporting to assign the rights of certain inventors of the Broad Applications, including Respondent Habib, to Broad. (Declaration of George Schlich ("Schlich Decl."), Ex. H.)  The accuracy of these documents had been called into question by Applicant as they referenced patent applications that were not filed until after the date of the assignment. (*Id.*, Ex. E at ¶ 223.)

EPO submission, including Kowalski's declarations.  Such targeted discovery is necessary to prevent determination of the rights regarding a revolutionary biotechnology tool based on the selective and one-sided set of facts presented by Respondent to the EPO.  *See In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 299 (S.D.N.Y. 2010) (granting Section 1782 discovery and stating "[s]unlight is said to be the best of disinfectants") (internal quotation marks omitted)).

Section 1782 authorizes "[t]he district court of the district in which a person resides or is found [to] order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal[.]"  28 U.S.C. § 1782(a).  The discovery sought by this Petition not only satisfies all the statutory requirements for discovery, but also the discretionary factors weigh in favor of ordering the requested disclosure.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).  *First*, as a party to the foreign proceedings, Applicant is an "interested person," and the discovery sought is not privileged.  *Second*, Respondents are found within this District and, while Broad is a party to the European patent proceeding, the EPO does not have the authority to compel Broad to provide the requested discovery.  Additionally, Cong, Habib, and Zhang are not parties to the European opposition proceeding, and the EPO does not have the authority to compel discovery from those respondents.  *Third*, the EPO (for which the discovery is sought) is receptive to this type of evidence.  *Finally*, the discovery sought here is not unduly burdensome because Applicant has narrowly focused its requests on information relevant to the foreign proceeding in question, and to information that itself was put at issue by Respondent Broad in the foreign proceedings.  Where, as here, the information sought is relevant, it is "presumptively discoverable" under

Section 1782.  *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998).  In these circumstances it is appropriate for the Court to exercise its discretion to permit discovery.

For the reasons that follow, Applicant respectfully requests this Court grant its Section 1782 Petition for document and deposition discovery from the Respondents.

## FACTUAL BACKGROUND

### A.   INTELLIA

Intellia is a leading genome editing company, focused on the development of proprietary, potentially curative therapeutics using a recently developed biological tool known as the CRISPR/Cas9 system. (*See* Ex. 11.)  Intellia was co-founded by Dr. Jennifer Doudna of the University of California, Berkeley, who, in collaboration with Dr. Emmanuelle Charpentier, led the team that developed the application of CRISPR/Cas9 and its use as a tool for genome engineering. (*See* Ex. 12.)  For this invention, Drs. Doudna and Charpentier have received numerous awards and recognitions, including the Breakthrough Prize in Life Sciences, Time Magazine's 100 most influential people in 2015, the Lurie Prize in Biomedical Sciences from the Foundation for the National Institutes of Health, the Heineken Prize from the Royal Netherlands Academy of Arts and Sciences, and the Gruber Prize in Genetics. (*See* Ex. 13.)

On May 25, 2012, Dr. Doudna and her co-workers filed U.S. Provisional Patent Application No. 61/652,086 describing the team's groundbreaking work. (*See* Ex. 14.)  This patent application has led to numerous United States and foreign patent applications concerning the CRISPR/Cas9 technology ("Doudna Patent Applications").  Recognizing the importance of the Doudna Patent Applications to its goal to cure diseases using CRISPR/Cas9, Intellia took a license to these patents. (*See* Ex. 12.)

The mission of Intellia is to develop potentially curative genome editing treatments that can positively transform the lives of people living with severe and life-threatening diseases.

(Ex. 11.)  For example, through a collaboration with Novartis, Intellia's CRISPR platform is being used to engineer chimeric antigen receptor T-cells, which may have applications in the treatment of cancer. (*See* Ex. 12.)  Additionally, Novartis and Intellia are using the CRISPR platform to edit hematopoietic stem cells, which has the potential to treat hereditary blood disorders like sickle cell anemia or hemophilia. (*Id.*)  Intellia is also collaborating with Regeneron to, for example, develop potential treatments for liver diseases. (*See* Ex. 15.)  Thus, Intellia is actively seeking to translate the promise of CRISPR/Cas9 into meaningful advances for patients.

## B.    THE BROAD PATENTS

On December 12, 2012, nearly seven months after the first Doudna Patent Application was filed, Respondent Broad filed US Provisional Patent Application 61/736,527 (" the '527 Provisional Application"). (*See* Schlich Decl., Ex. A.)  This was the first in a series of 21 priority patent applications and ten Patent Cooperation Treaty ("PCT") applications filed on December 13, 2013 relating to CRISPR/Cas9 technology. (*See id.*, Ex. F at Annex 1.)  There were initially four listed inventors for the '527 Provisional Application: Feng Zhang, Le Cong, Naomi Habib, and Luciano Marraffini. (*Id.*, Ex. A.) Respondents Zhang, Cong, and Habib were researchers at Broad (or its partner institutions).  Marraffini was a researcher at Rockefeller.  On May 1, 2014, Broad filed a request with the U.S. Patent Office to correct the inventorship of the '527 Provisional Application, and add as inventors David Benjamin Turitz Cox, Patrick Hsu, Shuailiang Lin, and Fei Ran. (Schlich Decl., Ex. D.)  Broad did not ask the Patent Office to remove Marraffini or Respondent Habib as inventors. (*See id.*)

Stemming from the '527 Provisional Application, Broad filed dozens of patent applications in the United States and in Europe.  The European patent applications resulted in more than four issued European patents, including European Patent Nos. 2 771 468 B1 ("the

'468 patent"), EP 2 784 162 B1  ("the '162 patent"), EP 2 764 103 B1  ("the '103 patent"), and

EP 2 896 697 B1  ("the '697 patent") (collectively the "Challenged Patents"). (*See* Schlich Decl.

at ¶ 4.)  Notably, despite claiming priority to the '527 Provisional Application on which Habib,

Cox, Lin, and Marraffini are listed as inventors and applicants, the Challenged Patents do *not* list

any of these scientists or their successors as applicants. (*See id.* at ¶¶ 4, 9.)  The '103 patent

additionally does not list Respondent Cong, Patrick Hsu, and Fei Ran or their successors, even

though each is also listed as an inventor and applicant on the '527 Provisional Application.

## C.   THE INTELLIA OPPOSITION PROCEEDINGS BEFORE THE EUROPEAN PATENT OFFICE

Between October 26, 2015 and June 2, 2016, Applicant Schlich filed four oppositions

with the EPO seeking the revocation of the Challenged Patents ("Intellia Oppositions"):

| Patent Number | Patent Title | Listed Inventors | Date Opposition Filed |
|---|---|---|---|
| EP 2 771 468 B1 | Engineering of Systems, Methods and Optimized Guide Compositions for Sequence Manipulation | Feng Zhang Le Cong Patrick Hsu Fei Ran | October 26, 2015 |
| EP 2 784 162 B1 | Engineering of Systems, Methods and Optimized Guide Compositions for Sequence Manipulation | Le Cong Feng Zhang Patrick Hsu Fei Ran | January 8, 2016 |
| EP 2 764 103 B1 | CRISPR-CAS Systems and Methods for Altering Expression of Gene Products | Feng Zhang | May 12, 2016 |
| EP 2 896 697 B1 | Engineering of Systems, Methods and Optimized Guide Compositions for Sequence Manipulation | Feng Zhang Le Cong Patrick Hsu Fei Ran | June 2, 2016 |

(Schlich Decl. at ¶ 4.)  Applicant Schlich is a European Patent Attorney. (*Id.* at ¶ 1.)  As is

common practice in the EPO, Schlich filed the Intellia Oppositions in his name on behalf of his

client Intellia. (*See id.* at ¶¶ 4, 7.)  The Intellia Oppositions are inter partes procedures, meaning

both Applicant and the patent owners can submit argument and evidence to the EPO. (*See id.* at ¶ 3.)

The Intellia Oppositions seek revocation of the Challenged Patents on several grounds, including because the Challenged Patents fail to name as applicants individuals (including Respondents Cong and Habib) who are listed as inventors and applicants of the priority patent applications. (*See id.* at ¶ 12.)  Each of the Challenged Patents was also opposed by six to eight other parties, all of which also seek revocation of one or more of the Challenged Patents on the grounds that the Broad had failed to name in the PCT applications all the applicants of the priority applications. (*See, e.g.*, *id.* at ¶ 13; *id.*, Ex. E at ¶¶ 162-163.)

In response to the first Intellia Opposition[5], Broad filed a response on June 30, 2016, making arguments surrounding the inventorship and ownership of the alleged inventions in the Challenged Patent. (*Id.* at ¶ 14; *id.*, Ex. E).  Broad also argued that although the '527 Provisional Application listed Habib, Cox, Lin, and Marraffini, none of these scientists were in fact inventors of the Challenged Patent, and were properly omitted as applicants. (*Id.*)

To support its inventorship arguments, Broad submitted a declaration by its United States Patent Attorney, Kowalski ("Kowalski Inventorship Declaration"). (Schlich Decl. at ¶ 14; *id.*, Ex. F.)  The Kowalski Inventorship Declaration describes an inventorship study Kowalski undertook at the request of Broad to determine the inventorship of the Broad Patents, including the Challenged Patents. (*Id.*, Ex. F at ¶ 15.)  As part of the inventorship study, Kowalski interviewed individuals "working in Dr. Feng Zhang's laboratory at Broad, as well as Dr. Luciano Marraffini and individuals working at Dr. Marraffini's Laboratory of Bacteriology at

---

[5] The deadline for the patent owner's response in the remaining Intellia Oppositions has not yet passed.

Rockefeller University ('Rockefeller')." (*Id.*)   Kowalski also collected documents from the

individuals he interviewed. (*Id.* at ¶ 18.)  Based on these interviews and documents, Kowalski

provided his opinion as to the correct inventors of the Broad Patents and Applications (including

the Challenged Patents). (*Id.* at ¶ 18 ("[C]onsidering the matters discussed and materials

provided by the individuals interviewed and their explanations given during these interviews, I

affirmatively state and confirm that the applicants and inventors are correctly identified on the

PCT applications as set out in paragraph 17 above."); *id.* at ¶ 16 ("Based on this inventorship

study, I concluded that Dr. Feng Zhang first conceived of CRISPR-Cas9 genome editing for use

in mammalian cells, implemented the proof of concept study thereof while establishing his

laboratories at MIT and The Broad Institute, and contributed in a not insubstantial manner to

both general and specific aspects of claims of each of the PCT filings. . . .").)  Remarkably,

neither Broad nor Kowalski provided the underlying documents or notes of the interviews

referenced to Applicant or the EPO. (Schlich Decl. at ¶ 15.)

   Kowalski also submitted a second declaration in support of Broad's arguments. (*Id.*,

Ex. H ("Kowalski Assignment Declaration"), collectively with the Kowalski Inventorship

Declaration ("Kowalski Declarations").)  Specifically, Applicant and two other opponents

challenged the assignments from certain inventors of the Broad Applications to Broad, as they

contained patent application numbers for patents that had yet to be filed as of the date the

assignments were dated. (*See* Schlich Decl. at ¶ 16.)  The Kowalski Assignment Declaration

explains how Vedder allegedly added the patent numbers into the assignments after they were

signed. (*Id.*, Ex. H at ¶ 4.)

Pursuant to EPO opposition procedure, Applicant may respond to the Broad submission and Kowalski Declarations with argument and evidence, including documentary evidence, deposition testimony, or declarations. (*See* Schlich Decl. at ¶¶ 3, 19.)

**D.     THE DISCOVERY SOUGHT HERE**

Applicant seeks discovery solely concerning the priority and ownership claims of the Challenged Patents, including the inventorship study and assignments put at issue in the Intellia Oppositions through Respondent Broad's arguments and Respondent Broad's submission of the Kowalski Declarations.  No more.

Specifically, Applicant seeks document and deposition discovery from Respondents Broad and Zhang regarding (i) documents and testimony regarding the inventive contribution of those named as applicants on the Broad Patent Applications, including Respondents Zhang, Cong, and Habib; (ii) documents and testimony regarding the inventorship study described in the Kowalski Inventorship Declaration; and (iii) the assignments of the patents discussed in the Kowalski Declarations.  (*See* Exs. 1-4.)  To reduce the potential intrusion or burden still further, Applicant seeks only testimony from Respondent Habib (*see* Ex. 5), and documents and testimony from Respondent Cong regarding his inventive contribution, his assignment of the subject matter of the Broad Applications, and his knowledge of the inventorship study described above (*see* Exs. 6-7). [6]

The requested discovery is highly relevant to Applicant's invalidity claims in the Intellia Oppositions and is narrowly tailored to avoid undue burden on Respondents.

---

[6] Applicant seeks a deposition of Respondents Zhang, Habib, and Cong in their personal capacity.  While not obligated to describe the matters for examination, Applicant has provided its intended topics for examination to show its intent to confine the deposition to narrow, relevant, and non-privileged topics.

**ARGUMENT**

A.     **THE REQUESTED DISCOVERY SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782**

Section 1782 allows any party with an interest in a foreign proceeding to apply to a district court for discovery within the district.  In particular, Section 1782 states in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal…. The order may be made … upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court…. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).  The goal of the statute is to "provid[e] equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects."  S.Rep. No. 88–1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3783; *see also Intel*, 542 U.S. at 247, ("Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals.").  In support of its goal, Section 1782 has, "over the years, been given 'increasingly broad applicability.'"  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (quoting *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir.), *cert. denied*, 510 U.S. 965 (1993)).

Thus, under the statute, a District Court may grant a petition for discovery pursuant to Section 1782 if it: (1) is directed at someone found within the District; (2) is intended for use before a foreign tribunal; (3) is based upon the application of a person interested in the foreign proceeding; and (4) does not seek privileged materials.  28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 249.  The Petition meets these four statutory requirements.

### 1.       The Respondents are Found Within this District

Respondent Broad is a registered Massachusetts nonprofit corporation with a principal

office in Cambridge, Massachusetts and a Resident Agent in Boston, Massachusetts. (*See* Ex.

16.)  According to the Broad directory, Respondent Zhang is a core faculty member at Broad

located at 75 Ames Street, Cambridge MA, 02142 (*see* Ex. 17); Respondent Habib is a

Postdoctoral Fellow at Broad at the same location (*see* Ex. 18); and Respondent Cong is a

Postdoctoral Fellow at Broad located at 415 Main Street, Cambridge, MA, 02142 (*see* Ex. 19).

Moreover, on the '527 Provisional Application, Zhang, Habib, and Cong's residence is listed as

"Cambridge, MA." (*See* Schlich Decl., Ex. A.)  Thus, all Respondents are found in this District.

*See, e.g.*, *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding*

*(USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (finding a corporation is "found" in a district

where it "has an office and does business"); *In re Edelman*, 295 F.3d 171, 177-80 (2d Cir. 2002)

(holding a person is "found" in a district where service of the subpoena can be made under

Federal Rule of Civil Procedure 45).

### 2.       The Discovery Sought is For Use in Proceedings in a Foreign Tribunal

*Second*, the EPO is a foreign tribunal, and Applicant is seeking discovery for use in

pending proceedings before such foreign tribunal.  Congress purposely used the word "tribunal"

in order to give the statute reach beyond foreign courts.  The Senate Report states:

> The word 'tribunal' is used to make it clear that assistance is not confined to proceedings
> before conventional courts. . . . In view of the constant growth of administrative and
> quasi-judicial proceedings all over the world, the necessity for obtaining evidence in the
> United States may be as impelling before a foreign administrative tribunal or quasi-
> judicial agency as in proceedings before a conventional foreign court.

S.Rep. No. 88–1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788; *see also Intel*, 542 U.S.

at 249 (finding Commission of the European Communities qualified as a "tribunal" under

Section 1782).

In *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, the Ninth Circuit recently found that the EPO was a foreign tribunal under Section 1782.  *See* 793 F.3d 1108, 1111 (9th Cir. 2015) (affirming a grant of discovery under Section 1782).  Specifically, the Ninth Circuit found that opposition proceedings in front of the EPO "carry many of the hallmarks of traditional judicial proceedings: serving as first instance decision-makers tasked with resolving patent validity disputes, collecting and reviewing evidence in order to resolve those disputes, and permitting their decisions to be appealed and become subject to further review." *Id.* (internal citation omitted)*; see also Amgen Inc. v. Hill*, No. 2:14-MC-00908-DN-EJF, 2015 WL 1401237, at *4 (D. Utah Mar. 25, 2015) (adopting Report & Recommendation to grant discovery under Section 1782 for use in entitlement proceedings concerning the inventorship and ownership of three European patents); *Minatec Finance S.à.r.l. v. SI Grp. Inc.*, No. 1:08-cv-269-LEK, 2008 WL 3884374, at *5 (N.D.N.Y. Aug. 18, 2008) ("Considering the comprehensive instruction from the Supreme Court in *Intel* on this very issue . . . . the law pronounces administrative agency's investigation, such as this tax audit, on equal footing with [a foreign] Court [of law]" for purposes of Section 1782.).  Thus, the Intellia Oppositions pending before the EPO are proceedings in a foreign or international tribunal.

### 3.      Applicant is an Interested Party

*Third,* Applicant is an "interested party."  In *Intel,* the Supreme Court unequivocally held that litigants in a foreign proceeding qualify as interested parties under the statutory requirement. *Intel*, 542 U.S. at 256 ("[A] complainant [in a foreign proceeding] 'possess[es] a reasonable interest in obtaining [judicial] assistance,' and therefore qualifies as an 'interested person' within any fair construction of that term.").  Indeed, the *Intel* court noted that a foreign litigant "may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Id.* (holding that a complainant who triggered a European Commission investigation satisfied the Section

1782 requirement for an "interested person"); *see also In re Application of Republic of Ecuador v. Douglas*, 153 F. Supp. 3d 484, 291 (D. Mass. 2015) ("[T]he Republic is an 'interested person' because it is the respondent in the Arbitration.").

Here, Applicant Schlich filed the Intellia Oppositions, is a party to those proceedings, and therefore qualifies as an interested party under Section 1782.  That Schlich filed both the Intellia Oppositions and this Petition as an agent for Intellia does not impact his status as an interested party.  *See, e.g.*, *Minis v. Thomson*, No. 14-91050, 2014 WL 1599947, *3 (D. Mass. Apr. 18, 2014) (finding officials of a party to a foreign proceeding were "interested parties").  Furthermore, under case law governing the European opposition process, Schlich is the party or opponent in the Intellia Oppositions.  (Schlich Decl. at ¶ 7.)  Thus, Applicant is clearly an interested party.

### 4.    The Discovery Sought is Not Privileged

*Finally*, the requested discovery is not privileged.  First, Applicant seeks discovery on the scientific work done by Respondents in allegedly developing the CRISPR/Cas9 technology claimed in the Challenged Patents and the assignment of any patent applications resulting from that work.  This discovery is unquestionably not privileged.

Second, Applicant seeks discovery related to the inventorship study described in the Kowalski Inventorship Declaration (Schlich Decl. at ¶ 14; *id.*, Ex. F.), including documents referenced in the declaration and documents that support or refute the conclusions therein.  The documents underlying Kowalski's inventorship study were created not for the purpose of securing legal advice but to document the alleged inventors' scientific work; the fact they eventually ended up with attorney Kowalski does not make them privileged.  *See, e.g.*, *Fisher v. United States*, 425 U.S. 391, 403 (1976) (holding that the attorney-client privilege only protects "disclosures necessary to obtain informed legal advice *which might not have been made absent*

*the privilege*") (emphasis added); *Hoffman-LaRoche, Inc. v. Roxane Laboratories, Inc.*, C.A. No. 09-6335, 2011 WL 1792791, at *8 (D.N.J. May 11, 2011) ("Documents are not privileged simply because they end up with a lawyer or eventually prove useful to the lawyer's provision of legal services."). And in any event, Broad has waived privilege on the inventorship study by affirmatively relying on it in the Intellia Oppositions. *See Genentech, Inc. v. ITC*, 122 F.3d 1409, 1415 (Fed. Cir. 1997). In similar circumstances, courts have held that declarations regarding inventorship submitted to the United States Patent Office waive privilege. *See Winbond Electronics Corp. v. ITC*, 262 F.3d 1363, 1375-76(Fed. Cir. 2001) (finding patentee waived attorney-client privilege and work product protection by submitting a declaration by inventor to the Patent Office to correct inventorship); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006) (finding patentee's "submission of the declarations to correct inventorship on the original patent application to the PTO was a waiver of privilege").

Here, Respondent Broad put at issue the inventorship study, the communications underlying it, and their opinions drawn from it in the Intellia Oppositions.[7] Thus, to the extent the documents and interviews underlying the inventorship study were ever privileged, that privilege has been waived for all communications relating to the inventorship study. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (noting fairness dictates that "a

---

[7] *See, e.g.*, Schlich Decl., Ex. F at ¶ 16 ("Based on this inventorship study, I concluded that Dr. Feng Zhang first conceived of CRISPR-Cas9 genome editing for use in mammalian cells, implemented the proof of concept study thereof while establishing his laboratories at MIT and The Broad Institute, and contributed in a not insubstantial manner to both general and specific aspects of claims of each of the PCT filings. . . .); *id* at ¶ 18 ("After having conducted the above inventorship study . . . and considering the matters discussed and materials provided by the individuals interviewed and their explanations given during those interviews, I affirmatively state and confirm that the applicants and inventors are correctly identified . . . ."); Schlich Decl., Ex. E at ¶¶ 203-206, 213-214, 216-217, 246, 248, 253, 256.

party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not"); *Bd. of Trustees of Leland Stanford Junior Univ.*, 237 F.R.D. at 625 (N.D. Cal. 2006) ("In sum, Stanford disclosed the contents of privileged attorney-client communications and work product protection to the PTO to successfully obtain ownership of the contested patents, and cannot now attempt to shield all other communications on the same subject matter, as this would unfairly prejudice Roche.").

Because Applicant has limited its discovery requests to the non-privileged categories of discovery described above, the discovery sought is not protected by a "legally applicable privilege."  However, even assuming that any privilege could apply to potentially responsive discovery, the Federal Rules of Civil Procedure, which govern the process of discovery in Section 1782 applications, provide adequate protection.  *See Heraeus Kulzer, GmBH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011); *see also In re Application of Chevron Corp.*, 749 F. Supp. 2d 135, 140 (S.D.N.Y. 2010) (denying motion to quash a subpoena issued pursuant to Section 1782 over privilege objections, finding respondent's "privilege claims, to whatever extent they have not been waived, are premature at best.").

**B.      ALL OF THE DISCRETIONARY FACTORS OF SECTION 1782 WEIGH IN FAVOR OF PERMITTING THE DISCOVERY APPLICANT SEEKS**

Where, as here, the statutory requirements of Section 1782 have been met, the Supreme Court has directed district courts to consider four additional factors before exercising their discretion to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a party in the foreign proceedings; (2) the receptivity of the foreign tribunal to federal-court assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome.  *See Intel*, 542 U.S. at 264-65; *see also In re Ex Parte Application of Pro-Sys Consultants and Neil*

*Godfrey*, No. 16-mc-91016-PBS, 2016 WL 4154306, *1 (D. Mass. Aug. 5, 2016).  Although it is

not necessary that all discretionary factors be met, as set forth below, each factor weighs in favor

of granting the discovery requested here.

> **1.      The Discovery Sought is Unobtainable Absent Section 1782 Aid**

The primary objective of Section 1782 is "to assist foreign tribunals in obtaining relevant

information that . . . they cannot obtain under their own laws." *Intel*, 542 U.S. at 262.  The first

*Intel* factor is whether "the person from whom discovery is sought is a participant in the foreign

proceeding" because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is

when evidence is sought from a nonparticipant in the matter arising abroad." *Id*. at 264.  The

Supreme Court explained the rationale for this factor as follows: "A foreign tribunal has

jurisdiction over those appearing before it, and can itself order them to produce evidence.  In

contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's

jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable

absent § 1782(a) aid." *Id*. (internal citations omitted).  Thus, district courts have recognized that

the central focus of the first factor is whether or not discovery is available absent 1782 aid, rather

than whether respondent is a target to the foreign proceeding.  *See, e.g., In re Judicial Assistance*

*Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd. (Macquarie Bank II)*, No. 2:14–cv–00797–

GMN–NJK, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015), *reconsideration denied sub nom.*

*Matter of A Petition for Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank*

*Ltd.*, 2015 WL 7258483 (D. Nev. Nov. 17, 2015) ("Although the case law at times refers to

whether the 'person' is within the foreign tribunal's jurisdictional reach, the key issue is whether

the material is obtainable through the foreign proceeding."); *In re Appl. of Ooo Promnefstroy*,

Misc. No. M 19–99(RJS), 2009 WL 3335608, *5 (S.D.N.Y. Oct. 15, 2009) ("[I]t is the foreign

tribunal's ability to control the evidence and order production, not the nominal target of the

§ 1782 application, on which the district court should focus"); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ("The relevant inquiry is whether the evidence is available to the foreign tribunal").  And courts routinely grant 1782 petitions where the respondent is a party to the foreign proceeding. [8]

Here, the EPO has no authority to compel production of documents located in the United States or deposition testimony from United States witnesses. (*See* Schlich Decl. at ¶¶ 19-20.) Although the EPO has no discovery procedures to obtain this evidence, as discussed below, the EPO is receptive to receiving such evidence.  *See, infra*, B.2.  Thus, documents and testimony Applicant seeks from Respondents in order to provide the EPO with the complete facts are unavailable absent 1782 assistance from this Court.  As such, this factor weighs in favor of granting the application.

### 2. The European Patent Office is Receptive to Discovery Pursuant to Section 1782

The second *Intel* factor looks at the receptivity of the foreign tribunal to discovery received pursuant to Section 1782.  Courts have taken differing views on how this factor should be interpreted.  As noted by one court in this District in *Chevron v. Shefftz*, while the First Circuit has not addressed this issue, the Second and Third Circuits take the view that "[r]espondent has the burden of providing that the foreign tribunal is unreceptive to the evidence.  Absent such

---

[8] *See, e.g.*, *Akebia*, 793 F.3d at 1112-1113 (affirming district court's grant of 1782 application against patent owner in European and Japanese patent office proceedings); *Heraeus Kulzer,* 633 F.3d 591 (reversing district court's denial of 1782 application for discovery against party to German suit); *Marubeni America Corp. v. LBA Y.K.*, 335 Fed. App'x 95, 98 (2d Cir. 2009) (affirming district court's grant of 1782 application for discovery against party to Japanese suit); *Cryolife, Inc. v. Tenaxis Medical, Inc.*, No. C08-05124 HRL, 2009 WL 88348, *2-*3 (N.D. Cal. Jan. 13, 2009) (granting 1782 application for discovery against party to German suit); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (granting 1782 application for discovery against party to Venezuelan suit).

proof the factor weighs in favor of granting such discovery." 754 F. Supp. 2d 254, 261 n. 51 (D.

Mass 2010); *see also Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995)

("Absent specific directions to the contrary from a foreign forum, the statute's underlying policy

should generally prompt district courts to provide some form of discovery assistance."); *Bayer*

146 F.3d at 196.[9]  While the court in *Chevron* noted that another court in this District viewed that

"authoritative proof" of the foreign tribunal's receptivity is needed in order for the second factor

to favor discovery, it ultimately decided on a "middle ground between the two views" finding

that the foreign tribunal was still accepting documents and therefore this factor weighed "slightly

in favor of discovery."  *Chevron v. Shefftz*, 754 F. Supp. 2d at 261.

Here, the rules governing European oppositions and past practice confirm the EPO would

be receptive to the discovery sought herein.  Indeed, the rules governing opposition proceedings

at the EPO contain no restrictions with regards to the type of evidence that may be admitted and

the EPO has allowed the submission of broad evidence in prior matters. (*See* Schlich Decl. at ¶¶

18-19, 21-27.)  Moreover, in *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, the Ninth Circuit

affirmed the District Court's grant of document and deposition discovery pursuant to Section

1782 for use in a European Opposition.  *See* 793 F.3d at 1112-13.  Opponent Akebia

Therapeutics submitted evidence obtained pursuant to Section 1782 to the EPO, and the EPO not

only accepted that evidence but relied on it in making its decision to revoke the patent in

question. (*See* Schlich Decl. at ¶ 22-23; *id.*, Ex. I at Section 4.4-4.5.)

---

[9] Furthermore, in *Intel*, the Supreme Court found that a Section 1782 application could be
granted despite the fact that the foreign tribunal hearing the underlying matters "stated in *amicus
curiae* briefs to this Court that it does not need or want the District Court's assistance".  542 U.S.
at 265.

Because of the clear indications that the EPO is amenable to evidence gathered pursuant to Section 1782, the second discretionary factor weighs in favor of the requested discovery no matter which view of this factor is taken.

**3.      The Petition is Not an Effort to Circumvent Foreign Proof-Gathering Restrictions**

The third discretionary *Intel* factor – whether the applicant is attempting to "circumvent foreign proof-gathering restrictions" – is meant to preclude bad faith misuse of the process.  *See Chevron v. Shefftz*, 754 F. Supp. at 262.  This application is clearly a good faith effort to obtain evidence for the sole purpose of presenting the EPO with a complete picture, where the patentee has presented incomplete evidence.  Furthermore, an applicant is not required to seek discovery of the materials from the foreign tribunal before filing a Section 1782 application and the information sought need not be discoverable there.  *Intel*, 542 U.S. at 253 (holding that Section 1782 does not impose a "foreign-discoverability requirement"); *Bayer*, 146 F.3d at 196 ("Indeed, a 'quasi-exhaustion requirement' . . . has been rejected by those courts that have addressed it.").  Accordingly, this factor also weighs in favor of the requested discovery.

**4.      The Discovery is Neither Unduly Burdensome Nor Intrusive**

The final discretionary *Intel* factor concerns whether the discovery sought is unduly burdensome or intrusive.  *See Intel*, 542 U.S. at 265.  "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015).   Here, Applicant's discovery requests are not unduly burdensome or intrusive.  To the contrary, they are narrowly tailored in scope and substance to Applicant's evidentiary needs in the Intellia Oppositions.  Specifically, Applicant has narrowly tailored its requests to three categories of discovery all put at issue by

Broad in the Intellia Oppositions (i) documents and testimony regarding the inventive contribution of those named as applicants on the Broad Patent Applications, including each of Respondents Cong, Habib, and Zhang (*see, e.g.*, Schlich Decl., Ex. E at ¶¶ 165, 203-206, 216-218, 247-249; Schlich Decl., Ex. F); (ii) documents and testimony regarding the inventorship study described in the Kowalski Inventorship Declaration (*see, e.g.*, Schlich Decl., Ex. E at ¶¶ 201-206, 213-214, 216-217, 246, 248, 253, 256; Schlich Decl., Ex. F); and (iii) the assignments of the patents discussed in the Kowalski Declarations (*see, e.g.*, Schlich Decl., Ex. E at ¶¶ 223, 227; Schlich Decl., Ex. H.).

Thus, Applicant's requests seek *only* discovery on the inventorship and ownership topics put at issue by Respondent Broad in the Intellia Oppositions. As such, the requested discovery is necessary in order to present the European Patent Office with a complete and accurate picture. *Bayer*, 146 F.3d at 196 (noting where the information sought is relevant it is "presumptively discoverable" under Section 1782). Furthermore, Respondent Broad likely gathered and reviewed much of the information sought by Applicant in order to prepare its response in the Intellia Oppositions. Accordingly, it is not an undue burden for Respondents to produce that material to Applicant.

Therefore, this factor weighs in favor of the requested discovery.[10]

---

[10] Although Applicant has made every effort to propound narrowly tailored discovery requests, if the Court deems any of the requests to be overly broad at the outset, Applicant respectfully requests that the requests be modified—or Applicant be given the opportunity to modify them. *In re Application For an Order Permitting Metallgesellschaft AG*, 121 F.3d 77, 80 (2d Cir. 1997) (quoting *Euromepa*, 51 F.3d at 1101); *see also Heraeus Kulzer*, 633 F.3d at 598 (finding that if the district court found the requested discovery too broad the "district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible."); *Consorcio Ecuatoriano de Telecomunicaciones*, 747 F.3d at 1272-74.

**CONCLUSION**

For the foregoing reasons, Applicant respectfully requests that this Court grant this

Petition and issue the requested subpoenas for document and deposition discovery.

Dated:  September 2, 2016

By /s/Mary K. Ferguson
    Mary K. Ferguson (BBO No. 655395)
    FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
    2 Seaport Lane
    Boston MA 02210-2001
    Telephone: 617.646.1600
    Facsimile: 617.646.1666
    mary.ferguson@finnegan.com

    *Attorneys for Applicant*
    *George W. Schlich*

*Of Counsel:*

Michael A. Morin
David. P. Frazier
Casey L. Dwyer
LATHAM & WATKINS LLP
555 Eleventh St., NW
Washington, D.C. 20004-1304
Telephone: 202.637.2200
Facsimile: 202.637.2201
michael.morin@lw.com
david.frazier@lw.com
casey.dwyer@lw.com
*Pro hac vice motion to be filed*