IN UNITED STATES DISTRICT COURT
FOR DISTRICT OF MASSACHUSETTS

In re Application of GEORGE W. SCHLICH for Order to Take Discovery Pursuant to 28 U.S.C. § 1782

    Applicant

Case No. 1:16-mc-91278

**DECLARATION OF GEORGE W. SCHLICH IN SUPPORT OF *EX PARTE* PETITION AND APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

I, George W. Schlich, hereby declare as follows:

1. I am a European Patent Attorney at Schlich Ltd, 9 St Catherine's Road, Littlehampton, West Sussex, United Kingdom. Schlich Ltd, a firm of European patent and trade mark attorneys, is engaged by Intellia Therapeutics Inc. ("Intellia") to provide legal services in connection with four European Oppositions filed against patents owned by, inter alia, the Broad Institute ("Intellia Oppositions").

2. I submit this Declaration in support of the Petition and Application for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign Proceedings (the "Application"). I am over the age of 18 and make this Declaration based on my own personal knowledge.

THE EUROPEAN OPPOSITIONS

3. A European Opposition is a proceeding before the European Patent Office's Opposition Division that allows any member of the public to challenge a European patent within nine months of its grant. The opposition procedure is an inter partes procedure, in which both the patent owner and the challenger have the opportunity to submit argument and evidence in support of their positions. A decision by the Opposition Division can be appealed.

4.      Between October 26, 2015 and June 2, 2016, I filed the Intellia Oppositions with the European Patent Office seeking the revocation of European Patent Nos. 2 771 468 B1 ("the '468 patent"), EP 2 784 162 B1 ("the '162 patent"), EP 2 764 103 B1  ("the '103 patent"), and EP 2 896 697 B1  ("the '697 patent") (collectively the "Challenged Patents"):

| Patent Number | Patent Title | Listed Inventors | Date Opposition Filed |
|---|---|---|---|
| EP 2 771 468 B1 | Engineering of Systems, Methods and Optimized Guide Compositions for Sequence Manipulation | Feng Zhang Le Cong Patrick Hsu Fei Ran | October 26, 2015 |
| EP 2 784 162 B1 | Engineering of Systems, Methods and Optimized Guide Compositions for Sequence Manipulation | Le Cong Feng Zhang Patrick Hsu Fei Ran | January 8, 2016 |
| EP 2 764 103 B1 | CRISPR-CAS Systems and Methods for Altering Expression of Gene Products | Feng Zhang | May 12, 2016 |
| EP 2 896 697 B1 | Engineering of Systems, Methods and Optimized Guide Compositions for Sequence Manipulation | Feng Zhang Le Cong Patrick Hsu Fei Ran | June 2, 2016 |

5.      The Challenged Patents are assigned to The Broad Institute ("Broad") and The Massachusetts Institute of Technology ("MIT"), and the '468 Patent, the '162 Patent, and the '697 Patent are also assigned to The President and Fellows of Harvard College ("Harvard"), collectively "the patentees."

6.      There are also more than twenty additional European patents and patent applications related to the Challenged Patents that have granted or which may be granted in the future for which the period to file oppositions has not yet commenced and/or expired.

7.      While the Intellia Oppositions were filed in my name, I did so as an agent of

Intellia. Intellia pays for and controls the Intellia Oppositions. Filing in the attorney's name is common practice in oppositions in front of the European Patent Office. In this situation, it is the party that files the opposition, in this case me, who is considered the legitimate opponent. *See* G 3/97 and G 4/97 (OJ 1999, 245, 270).

8. The Challenged Patents generally relate to CRISPR/Cas9 DNA editing tools that combine an engineered polynucleotide and an enzyme to achieve a specific DNA editing effect. The Challenged Patents claim priority to a series of United States provisional patent applications, including US 61/736,527 ("'527 Application") filed on December 12, 2012 and US 61/748,427 ("'427 Application") filed on January 2, 2013. The cover sheet for the '527 Application available on the United States Patent Office website is attached as Exhibit A. And the cover sheet for the '427 Application available on the United States Patent Office website is attached as Exhibit B.

9. The '527 Application and '427 Application as-filed listed Feng Zhang, Le Cong, Naomi Habib and Luciano Marraffini as inventors. *See* Exhibit A; Exhibit B.

10. On December 11, 2013, Mr. Kowalski, an attorney for the Broad Institute, filed a request to correct the inventorship of the '427 Application. This request for correction of inventorship, which is available on the United States Patent Office website, is attached as Exhibit C. The request sought to add as inventors David Benjamin Turitz Cox, Patrick Hsu, Shuailiang Lin, and Fei Ran. *See* Exhibit C. The request did not ask the Patent Office to remove Dr. Marraffini or Dr. Habib as inventors. *See id.*

11. On May 1, 2014, Mr. Kowalski filed a request to correct the inventorship of the '527 Application. This request for correction of inventorship, which is available on the United States Patent Office website, is attached as Exhibit D. The request sought to add as inventors

David Benjamin Turitz Cox, Patrick Hsu, Shuailiang Lin, and Fei Ran.  *See* Exhibit D.  The request did not ask the Patent Office to remove Dr. Marraffini or Dr. Habib as inventors.  *See id.*

12. Among other things, the Intellia Oppositions seek revocation of the Challenged Patents on the ground that the patents are not entitled to the benefit of priority of at least certain priority applications because they do not list Naomi Habib, Luciano Marraffini, Shuailiang Lin, or David Cox as applicants, despite claiming priority of invention back to the '527 Application and '427 Application.  A consequence of being not entitled to this priority claim is that the patents must be revoked because additional prior art is available that prejudices the validity of the patents.  In addition, Intellia seeks revocation of certain of the Challenged Patents because they are not entitled to their priority claim with respect to the contributions of Luciano Marraffini, David Bikard, Wenyan Jiang, Le Cong, Patrick Hsu, Fei Ran, Naomi Habib, David Cox, and/or Shuailiang Lin.  As such, the Challenged Patents are not entitled to claim priority to at least the '527 Application or '427 Application, and all features of the claimed DNA editing tools were published before the Challenged Patents were filed.

13. Six to eight other parties have also filed oppositions seeking revocation of each of the Challenged Patents.

14. On June 30, 2016, the patentees filed a response to the opposition against the '468 patent.  A true and correct copy of this response, without exhibits, is attached as Exhibit E.  In response to the Intellia Opposition's arguments regarding priority, *inter alia*, the patentees argued that the priority question turns on determining inventorship under United States patent law.  *See, e.g.*, Exhibit E at ¶¶165, 181-182.  In support of their arguments, the patentees filed a declaration by Thomas J. Kowalski describing a purported "inventorship study" Mr. Kowalski conducted to determine the inventorship of certain patent applications related to the Challenged

Patents. *Id.* at ¶ 201. The patentees have used this declaration in support of their argument that Dr. Marraffini and Dr. Habib, among others, are not inventors, and therefore did not need to be named as applicants of the '468 patent. *Id.* at ¶¶ 201-207, 211-222, 224. The declaration similarly goes to the priority claims of all Challenged Patents. A true and correct copy of the declaration filed by patentee is attached to this declaration as Exhibit F ("Kowalski Declaration").[1]

15. In the declaration Mr. Kowalski references certain materials that underlie the inventorship study described in the declaration. *See* Exhibit F at ¶ 18. To my knowledge, the materials referenced were never provided to the European Patent Office, to Intellia, or to me.

16. Mr. Kowalski made a second declaration in support of the June 30, 2016 response of patentees. A true and correct copy of the declaration filed by patentee is attached to this declaration as Exhibit H ("Kowalski Assignment Declaration"). This declaration was made in response to an argument made in the Intellia Oppositions and by two other opponents challenging the assignments from certain inventors to the Broad Institute, as they contained patent application numbers for patents that had yet to be filed as of the date the assignments were dated. *See* Exhibit E at ¶ 223. The Kowalski Assignment Declaration explains how Respondent Vedder allegedly added the patent numbers into the assignments after they were signed. *See id.*; Exhibit H at ¶4.

17. The patentees have not yet filed a response to the oppositions against the '162 patent, '103 patent, or '697 patent.

## USE OF DISCOVERY IN THE EUROPEAN PATENT OFFICE

18. Article 117 of the European Patent Convention ("EPC") governs the means and

---

[1] A patent agent, Smitha Uthaman, who worked with Mr. Kowalski on the inventorship study also submitted a declaration purporting to agree with Mr. Kowalski's conclusions. A true and correct copy of this declaration is attached as Exhibit G.

taking of evidence and the allowance for hearing evidence with respect to proceedings before the European Patent Office.

19. In proceedings before the European Patent Office, the means of giving or obtaining evidence shall include hearing the parties, hearing witnesses and opinions of experts, requests for information, production of documents, inspection and sworn statements in writing. In relation to the hearing of experts, the European Patent Office can request that a national court in the country in which an expert is resident re-examines the evidence on oath (Rule 119(2) EPC). However, the European Patent Office lacks discovery procedures and thus has no authority to enforce discovery from third parties. As such, the European Patent Office can request, but has no authority to compel, parties to produce documents. *See, e.g.*, Benkard, EPÜ – Europäisches Patentübereinkommen, 1st Edition 2002, Article 117, lit. 21, page 1405. 1st paragraph. The European Patent Office also has no authority to compel deposition testimony.

20. Furthermore, the European Patent Office has no ability to compel discovery of documents located in the United States, where Mr. Kowalski conducted the purported "inventorship study" and where the scientists and patentees are located. Therefore, Intellia and I would not necessarily be able to discover documents, or take the depositions of witnesses, located in the United States relating to inventorship of the Challenged Patents.

21. The EPC does not preclude or limit the use of evidence obtained by U.S. discovery procedures in opposition procedures before the European Patent Office. In my experience, the European Patent Office will accept and assess any evidence that it receive. Admissibility is not based on how the document was obtained, but on when it is received during the opposition proceeding, that is, whether it is timely. As such, I see no reason why documents and testimony obtained through this Application would not be fully admissible in the Intellia

Oppositions, subject to confidentiality and procedural rules (e.g. those that dictate deadlines for filing of evidence).

22. In fact, the European Patent Office has previously admitted and relied upon evidence obtained through United States subpoenas pursuant to 28 U.S.C. § 1782. In July 2015, the U.S Court of Appeals for the Ninth Circuit affirmed the issuance of subpoenas pursuant to 28 U.S.C. § 1782 to conduct written and deposition discovery in aid of opposition proceedings at both the European Patent Office and Japanese Patent Office. *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108 (9th Cir. 2015). Attached as Exhibit I is a true and correct copy of the European Patent Office's decision in the subject European Opposition.

23. On 8 February 2016, one month prior to oral proceedings at the European Patent Office held in relation to EP1463823, documents obtained via the aforementioned 1782 action were filed at the European Patent Office and admitted into the proceedings. *See* Exhibit I at Section 1.8. In its decision revoking EP1463823, the opposition division of the European Patent Office discussed the discovery received through the 1782 action, stating for example:

> With letter dated 08.02.2016, [Opponent] filed D80 and D85, which were obtained by [Opponent] from [Patentee] via a U.S. District Court subpoena in a related U.S. discovery action. These documents disclose blinded test results which in [Opponent]'s opinion identify at least about 293 heterocyclic carboxamides that were shown to be inactive in one or more of HIFr-elated assays (including any HIFα stabilization (cell based) assay, EPO induction *(in vitro)* assay, EPO induction *(in vivo)* assay, and hematocrit *(in vivo)* response assay).

*Id.* at Section 4.4  Based in part on this evidence, the European Patent Office revoked the patent. *See id.* at 4.5

24. This is consistent with the general authority and practice relating to introduction of evidence in European Patent Office proceedings.

25. According to the Case Law of the Boards of Appeal, a collection of decisions of

the Boards of Appeal of the European Patent Office which is edited by the Legal Research Service for the Boards of Appeal and published by the European Patent Office, "Art. 117 EPC makes no provision for a definitive itemisation of admissible evidence. Nor does the Convention contain any provisions which say that certain questions of fact may only be proved by certain forms of evidence. In their case law, the Boards of Appeal have considered the question of whether the evidence submitted by a party can be admitted into the proceedings. The assumption here has been that *any type of evidence is admissible for proving any facts*." *See* Case Law of the Boards of Appeal, 6th edition 2010, English version, page 545; *see also* Legal Board of Appeal Decision J 11/88 (finding that questions of fact at the European Patent Office must be settled on the basis of any credible information available).

26.   European case law confirms that the EPC contains no restrictions with regard to evidence which may be admitted in proceedings before the European Patent Office. The Boards of Appeal have interpreted the term "taking of evidence" broadly, applying it "not only to the hearing of the oral evidence of parties, witnesses or experts . . . but also to the production of documents of any kind, affidavits and the giving and obtaining of evidence, whatever its form." *See* Case Law of the Boards of Appeal, 6th edition 20 I 0, English version, pages 545-546.

27.   Thus, based on the above, the European Patent Office is receptive to receiving evidence obtained using U.S. discovery procedures and imposes no proof-gathering restrictions upon the parties to opposition proceedings.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of August, 2016

_____
George W. Schlich